UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**BRADLEY SANDERS and DYLAN PRITCHARD,**

      Plaintiffs,

vs.

**OOH LA LA, INCORPORATED,** a Florida Profit Corporation

      Defendant.

_____ /

CASE NO.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, BRADLEY SANDERS ("SANDERS"), and DYLAN PRITCHARD ("PRITCHARD") (collectively "Plaintiffs"), by and through undersigned counsel, file this Complaint against Defendant, OOH LA LA, INCORPORATED, a Florida Profit Corporation ("OOH LA LA") to recover from Defendant improperly withheld tips as required by the Fair Labor Standards Act ("FLSA"), and to recover unpaid wages related to claims for breach of contract and breach of the duty of good faith and fair dealing, or, in the alternative, for unjust enrichment, and for promissory estoppel, and states as follows:

### JURISDICTION AND VENUE

1. Plaintiffs worked for OOH LA LA in Monroe County, Florida.

2. At all times material hereto, OOH LA LA was, and continues to be, a Florida Profit Corporation engaged in business in Monroe County, Florida.

   1. Jurisdiction in this Court is proper as the claims are brought pursuant to

1

the Fair Labor Standards Act, as amended (29 U.S.C. §201, et seq.) ("FLSA") to obtain a judgment against Defendant as to liability, recover unpaid wages, liquidated damages, and reasonable attorneys' fees and costs.

2. The jurisdiction of the Court over this controversy is proper pursuant to 28 U.S.C. §1331, as Plaintiff' claims arise under 29 U.S.C. §216(b).

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims for breach of contract and breach of the duty of good faith and fair dealing, or, in the alternative, for unjust enrichment and/or promissory estoppel, pursuant to 28 U.S.C. § 1367(a), because Plaintiffs' claims form a part of the same case or controversy and arise out of the common nucleus of operative facts as their FLSA claims.

4. The illegal conduct complained of occurred within the judicial district in and for Monroe County, Florida. Specifically, this conduct occurred in Key Largo, Florida.

**PARTIES**

5. At all times material hereto, Plaintiff SANDERS was, and continues to be, a resident of Miami-Dade County, Florida.

6. At all times material hereto, Plaintiff PRITCHARD was, and continues to be, a resident of Miami-Dade County, Florida.

7. At all times material to this action, OOH LA LA was a Florida Profit Corporation. Further, at all times material to this action, Defendant was, and continues to be, engaged in business in Florida, specifically, in Monroe County, Florida.

8. At all times material to this action, Plaintiffs were "employees" of Defendant within the meaning of the FLSA.

9. At all times material to this action, Defendant was Plaintiffs' "employer" within the meaning of the FLSA.

10. Defendant was, and continues to be, an "employer" within the meaning of the FLSA.

11. At all times material to this action, Defendant was, and continues to be, an "enterprise engaged in commerce" and an enterprise engaged in the "handling, selling, or otherwise working on goods and materials that have been moved in or produced for commerce by any person" within the meaning of the FLSA.

12. Based upon information and belief, the annual gross revenue of Defendant was in excess of $500,000.00 per annum during the relevant time periods.

13. At all times material to this action, Defendant had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, such as telephones, computers, hair products, and nail products.

14. At all times material hereto, the work performed by the Plaintiffs were directly essential to the business performed by Defendant.

## FACTUAL ALLEGATIONS

15. In December 2019, Defendant sent a written offer employment to each Plaintiff. *See* attached Exhibit A and B.

16. At the time they received these offers, Plaintiffs SANDERS and PRITCHARD resided in New York.

17. Plaintiffs accepted the offers of employment.

18. The offers specified that Plaintiffs would be Defendant's employees.

19. Pursuant to the accepted offers, SANDERS was to receive a $6,000.00 relocation fees and PRITCHARD was to receive $2,000.00 in relocation fees.

20. In accordance with the terms of their employment contracts, Plaintiffs began working for Defendant on January 13, 2020.

21. Plaintiffs were paid the promised relocation fees.

22. Plaintiffs understood that they were hired by Defendant as employees.

23. Plaintiff SANDERS was hired as a Master Colorist.

24. Plaintiff PRITCHARD was hired as a Master Nail Technician.

25. Pursuant to the terms of his contract, Plaintiff SANDERS was to be paid a 50% commission on services he rendered.

26. Pursuant to the terms of his contract, Plaintiff SANDERS was also to be paid a 10% commission on all retail sales.

27. Pursuant to the terms of his contract, Plaintiff SANDERS was guaranteed a minimum salary of $2,000.00 each week for the first three months of employment.

28. Pursuant to the terms of his contract, Plaintiff PRITCHARD was to be paid a 50% commission on services he rendered.

29. Pursuant to the terms of his contract, Plaintiff PRITCHARD was also to be paid a 10% commission on all retail sales.

30. Pursuant to the terms of his contract, Plaintiff PRITCHARD was guaranteed a minimum salary of $1,000.00 each week for the first three months of employment.

31. In their positions, Plaintiffs were tipped employees and also received gratuities for the work they performed. These were amounts paid by customers in

addition to the amount billed for the services, as a gift from the customers to Plaintiffs, to tip Plaintiffs for their excellent service.

32. During their employment, Plaintiffs learned that Defendant misappropriated the tips that Plaintiffs' customers had left for them.

33. Defendant improperly retained these tips, and used the tips to satisfy Defendant's own business expenses.

34. Defendant's retention of Plaintiffs' tips violates the FLSA.

35. Defendant knew, or with reasonable diligence should have known, that retaining Plaintiffs' tips was unlawful.

36. In addition, upon information and belief, Defendant unlawfully withheld earned commissions from Plaintiffs during their employment.

37. Upon information and belief, Plaintiffs have been damaged by Defendant's failure to pay them all of their earned commissions.

38. Plaintiffs' work for the salon created profits, generated customer sales, generated customer goodwill, and provided training for Defendant's employees.

39. The work Plaintiffs performed was for Defendant's benefit.

40. It would be unjust for Defendant to retain the value of Plaintiffs' work without paying them the amounts they were promised for this work, the promise of which induced Plaintiffs to perform this valuable work in the first place.

41. Plaintiffs performed all of the work that was asked of them, but have not been compensated as promised for the same, because Defendant took monies that should have been paid to Plaintiffs, including their tips and, upon information and belief, their sales commissions, and used those amounts to pay expenses that should have been borne

by Defendant.

42. Plaintiffs performed all of the work that was asked of them, but have not been compensated as promised for the same, because Defendant retained Plaintiffs' tips and, upon information and belief, did not pay Plaintiffs all of their promised commissions, thereby denying Plaintiffs full payment for their work.

43. Despite specifically hiring Plaintiffs as employees, Defendant also refused to pay required taxes and withholdings related to Plaintiffs' pay, instead telling Plaintiffs after they had already begun working that Defendant would report their income on an IRS Form 1099.

44. Plaintiffs were hired as employees and were treated as employees of Defendant's business at all times during their employment.

45. Specifically, Plaintiffs were not in business for themselves; Defendant controlled their work; Plaintiffs' opportunity for profit and loss was not dependent on their managerial skill; Plaintiffs were employed as full time workers and were paid salary and commissions rather than by the project; and Plaintiffs' work was integral to Defendant's business.

46. In fact, Plaintiffs were hired to supervise other employees of Defendant, each of whom was classified as an employee.

47. Because Defendant refused to pay Plaintiffs consistent with their designation as employees, as specified in their contracts, Plaintiffs' tax obligations are higher than they should be, because they have to shoulder the employer's share of taxes in addition to employee taxes.

48. As such, Plaintiffs have also been damaged by Defendant's refusal to

classify the payments to Plaintiffs as employee payments, consistent with the terms of the contracts between the Parties.

49. To the extent the commissions have been underpaid, the commissions to which Plaintiffs are entitled constitute wages under Florida law.

50. The employer's promise to treat Plaintiffs as employees, and to shoulder the corresponding employer's share of tax obligations is an employee benefit, which amounts constitute wages under Florida law.

51. Because Defendant refused to pay Plaintiffs in accordance with the law and their contracts, despite multiple requests, Plaintiffs were required to relocate and seek alternative employment. In doing so, Plaintiffs had to break their lease, which cost them approximately $3,000.00.

## COUNT I
## TIP DISGORGEMENT PURSUANT TO FLSA

52. Plaintiffs incorporate paragraphs 1 through 51 as though fully set forth herein.

53. On March 23, 2018, Congress enacted, and the President signed into law, the Consolidated Appropriations Act, 2018, PL 115-141, March 23, 2018, 132 Stat. 348.

54. Title XII, Section 1201 of the Consolidated Appropriations Act entitled "Tipped Employees" amended the FLSA to expressly create an employee's private right of action for any tips unlawfully withheld by an employer.

55. Pursuant to 29 U.S.C. § 203(m)(2)(B), an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

7

56. During the relevant time period, Defendant improperly required Plaintiffs to surrender tips they received, and retained those monies or otherwise used those monies to satisfy Defendant's own business expenses.

57. The tips at issue were not subject to a proper and valid tip pool.

58. Plaintiffs are entitled to an award of damages in an amount equal to the total amount of tips that were improperly withheld from them, plus an equal amount of liquidated damages.

59. Plaintiffs are also entitled to an award of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 216(b).

Wherefore, Plaintiffs pray for the following relief:

    a. Disgorgement of the tips improperly retained by Defendant;

    b. An award of an equal amount as liquidated damages;

    c. An award of the costs of suit and reasonable attorneys' fees;

    d. An award of post-judgment interest; and

    e. Any and all other relief that the Court deems just.

## COUNT II
## BREACH OF WRITTEN CONTRACT

60. Plaintiffs incorporate paragraphs 1 through 51 as though fully set forth herein.

61. Plaintiffs performed work for Defendant pursuant to the terms of a written contract pursuant to which Plaintiffs were to be paid commissions on sales to customers.

62. The terms of the contract also specified that Plaintiffs would be classified

as employees.

63. Defendant was obligated to make payments to Plaintiffs under the terms of the parties' agreement.

64. Upon information and belief, Defendant failed to compensate Plaintiffs all of the commissions owed.

65. Defendant failed to compensate Plaintiffs as employees, instead reporting their income in the manner of individuals working as independent contractors.

66. In breaching the contractual obligation to classify Plaintiffs as employees, Defendant denied Plaintiffs the employee benefit of having the Defendant cover the employer's share of taxes, further reducing the wages Plaintiffs actually earned from Defendant.

67. Defendant breached the contract to the extent Defendant failed to pay Plaintiffs their earned commission, and by reporting their income as that of contractors, rather than employees.

68. Plaintiffs have been damaged by Defendant's breach of their contract.

Wherefore, Plaintiffs pray for the following relief:

    a. An award of any unpaid commissions owed;

    b. An award offsetting the increased tax burden Plaintiffs will suffer as a result of Defendant's breach of the contract;

    c. An award of the amount Plaintiffs had to pay as a consequence of having to break their lease when they had to move in order to secure employment as the result of Defendant's refusal to honor the terms of their contracts;

    d.    An award of the costs of suit and reasonable attorneys' fees pursuant to Fl. Stat. § 448.08;

    e.    An award of pre- and post-judgment interest; and

    f.    Any and all other relief that the Court deems just.

## COUNT III
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

69. Plaintiffs incorporate paragraphs 1-51 as though fully set forth herein.

70. An implied covenant of good faith and fair dealing exists in all contracts.

71. Defendant violated the covenant of good faith and fair dealing.

72. Plaintiffs and Defendant entered into written contracts.

73. Plaintiffs did all, or substantially all, of the significant things that the contracts required them to do. Specifically, they performed as Master Colorist and Master Nail Technician.

74. All conditions required for Defendant's performance have occurred.

75. Despite the fact that conditions required for Defendant's performance under the contract have occurred, Defendant has not performed under the contract.

76. Defendant's conduct was not consistent with the parties' reasonable expectations under the provision of the contract requiring payment of commissions, and classification of payments to Plaintiffs as payments to employees.

77. Plaintiffs have been damaged by Defendant's conduct.

Wherefore, Plaintiffs pray for the following relief:

    a.    An award of any unpaid commissions owed;

    b.    An award offsetting the increased tax burden Plaintiffs will suffer as a result of Defendant's breach of the contract;

    c.    An award of the amount Plaintiffs had to pay as a consequence of having to break their lease when they had to move in order to secure employment as the result of Defendant's refusal to honor the terms of their contracts;

    d.    An award of the costs of suit and reasonable attorneys' fees pursuant to Fl. Stat. § 448.08;

    e.    An award of pre- and post-judgment interest; and

    f.    Any and all other relief that the Court deems just.

## COUNT IV
## UNJUST ENRICHMENT
### (in the alternative)

78. Plaintiffs incorporate paragraphs 1 through 51 as though fully set forth herein.

79. Plaintiffs conferred a benefit upon Defendant when they performed work for the Defendant's profit and benefit, with an expectation that they would be paid commissions on sales, and that their income would be reported as employee income.

80. Plaintiffs would not have performed work for Defendant had it indicated that it did not intend to pay them in the manner described in the preceding paragraph.

81. Defendant was aware of Plaintiffs' expectations that they would be paid in the manner described herein, and allowed and/or encouraged Plaintiffs to perform work on its behalf with that expectation.

82. Plaintiffs generated revenue and other benefits for Defendant through their work on its behalf.

83. It would be unjust to allow Defendant to retain the benefit of the revenue

11

and other gains generated by Plaintiffs' work, where Defendant is and was aware of Plaintiffs' expectations, and did not pay Plaintiffs all of the monies they reasonably expected to be paid for their work.

84. It would be unjust to allow Defendant to retain monies that it has been able to keep by not paying the employer's share of taxes related to Plaintiffs' income through its failure to pay Plaintiffs as employees, as agreed.

Wherefore, Plaintiffs pray for the following relief:

    a. An award of restitution or disgorgement of all revenue generated by Plaintiffs of an amount not less than: (1) any unpaid commissions owed as a result of Plaintiffs' sales; and (2) any amounts Defendant saved by classifying Plaintiffs' pay as payment to contractors, rather than employees, including but not limited to workers' compensation premiums, insurance premiums, and taxes;

    b. An award of the costs of suit and reasonable attorneys' fees pursuant to Fl. Stat. § 448.08;

    c. An award of pre- and post-judgment interest; and

    d. Any and all other relief that the Court deems just.

### COUNT V
### PROMISSORY ESTOPPEL
### (in the alternative)

85. Plaintiffs incorporate paragraphs 1 through 51 as though fully set forth herein.

86. Defendant promised Plaintiffs that they would be paid sales commissions, and that their income would be reported as employee income.

87. Defendant should have expected the promise to change Plaintiffs'

behavior.

88. In reliance on Defendant's promise, Plaintiffs changed their behavior, in that they moved to Florida and performed work for Defendant; and

89. Injustice can be avoided only if the promise is enforced.

Wherefore, Plaintiffs pray for the following relief:

a. An award of any unpaid commissions owed;

b. An award offsetting the increased tax burden Plaintiffs will suffer as a result of Defendant's breach of the contract;

c. An award of the expenses Plaintiffs suffered as a result of having to break their lease due to Defendant's breach of its promise;

d. An award of the costs of suit and reasonable attorneys' fees pursuant to Fl. Stat. § 448.08;

e. An award of pre- and post-judgment interest; and

f. Any and all other relief that the Court deems just.

## JURY DEMAND

90. Plaintiffs demand trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 30th day of October, 2020.

_____
Angeli Murthy, Esq., B.C.S.
Florida Bar No. 88758
Morgan & Morgan, P.A.
8151 Peters Rd., 4th Floor
Plantation, FL 33324
Tel: 954-318-0268
Fax: 954-327-3016
E-mail: Amurthy@forthepeople.com
*Attorney for Plaintiffs*

13

# EXHIBIT "A"



12/05/2019

Bradley Sanders
BSanders0801@gmail.com

Dear Bradley,

We are pleased to offer you the full-time position of Master Colorist at Ooh la la with a start date of 1/13/2020, contingent upon background check and offer acceptance. You will be reporting directly to Jason Hall, Executive Director, at 31 Ocean Reef Drive, 3rd Floor / Suite B300, Key Largo, FL 33037. We believe your skills and experience are an excellent match for our company.

In this role, you will be required to perform Guest color services (approximately 50-60 hrs/week, during high season and 30-40 hr/week, during off-season), as well as teach color education, regularly, to our team (approximately 8 classes/year).

The commission for this position is 50%, to be paid on a bi-weekly basis by direct deposit. In addition to this, you would earn 10% commission on all retail sales.

As an incentive, Ooh la la will offer a $2,000.00/week guarantee for the first three months of employment (unless commissioned earnings are higher), as well as use of a vehicle, determined by salon owner. Also, a $6,000.00 relocation fee will be paid, to assist in moving/housing.

Your employment with Ooh la la will be on an at-will basis, which means you and the company are free to terminate the employment relationship at any time for any reason. This letter is not a contract or guarantee of employment for a definite amount of time.

Please confirm your acceptance of this offer by signing and returning this letter by 12/09/2019.

We are excited to have you join our team! If you have any questions, please feel free to reach out at any time.

Sincerely,
Jason Hall
Executive Director
Ooh la la

# EXHIBIT "B"



12/05/2019

Dylan Pritchard

dylan@thenailwhisperer.ca

Dear Dylan,

We are pleased to offer you the full-time position of Master Nail Technician at Ooh la la with a start date of 1/13/2020, contingent upon background check and offer acceptance. You will be reporting directly to Jason Hall, Executive Director, at 31 Ocean Reef Drive, 3rd Floor / Suite B300, Key Largo, FL 33037. We believe your skills and experience are an excellent match for our company.

In this role, you will be required to perform Guest nail services (approximately 50-60 hrs/week, during high season and 30-40 hr/week, during off-season), as well as teach nail education, regularly, to our team (approximately 8 classes/year).

The commission for this position is 50%, to be paid on a bi-weekly basis by direct deposit. In addition to this, you would earn 10% commission on all retail sales.

As an incentive, Ooh la la will offer a $1,000.00/week guarantee for the first three months of employment (unless commissioned earnings are higher), as well as use of a vehicle, determined by salon owner. Also, a $2,000.00 relocation fee will be paid, to assist in moving/housing.

Your employment with Ooh la la will be on an at-will basis, which means you and the company are free to terminate the employment relationship at any time for any reason. This letter is not a contract or guarantee of employment for a definite amount of time.

Please confirm your acceptance of this offer by signing and returning this letter by 12/09/2019.

We are excited to have you join our team! If you have any questions, please feel free to reach out at any time.

Sincerely,

Jason Hall

Executive Director

Ooh la la